UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

**UNITED STATES OF AMERICA,**

                          Plaintiff,                 **REPLY MEMORANDUM**

           **v.**                                 **04-CR-402 TJM**

**YASSIN AREF,**

                          Defendant.

_____

       Yassin Aref, through his attorney, Terence L. Kindlon, respectfully submits this memorandum of law in reply to the government's response regarding proposed jury instructions. As discussed below, there is a strong need for an instruction on the credibility of informants; there is evidentiary support for a good faith instruction; and a conscious avoidance instruction, if any, must contain balancing language so that the jury will understand that more than just conscious avoidance is required to convict.

**Informant Credibility**

       The government cites *United States v. Ouimette*, 798 F.2d 47 (2nd Cir. 1986) in support of the proposition that there is no need for an instruction on informant credibility in this case. However, *Ouimette* does not support that position as it has absolutely nothing to do with informants - the jury instruction issue in that case involved a defense request that the police were particularly interested witnesses, and a request for a missing witness charge involving other police witnesses.

       Whenever an informant plays an important role in a case, and receives benefits as a result,

it is very clear that there must be an instruction on informant credibility. *United States v. Delicato*, 584 F.2d 974 (2d Cir. 1978); *United States v. Williams*, 59 F.3d 1180, 1183 (11th Cir. 1995); *United States v. Jackson*, 84 F.3d 1154, 1157 (9th Cir. 1996). The jury must be told that said benefits could encourage the informant to testify falsely. *United States v. Williams*, supra; *United States v. Jackson*, supra. Even where, unlike the instant case, corroboration is not an issue, the instruction should still be given. *See United States v. Rodriguez-Garcia*, 983 F.2d 1563 (10th Cir. 1993).

In the instant case, while certain aspects of the informant Malik's statement's are corroborated by the tape recordings, there are *many* statements by him which implicate the defendants and which are not corroborated at all, including statements regarding what occurred on February 12, 2004 when the tape recorder happened to not record certain alleged crucial statements. If February 12 were the *only* date on which there was no corroboration, it is submitted that a failure to give an instruction on informant credibility would constitute reversible error on that ground alone. However, there are many other instances where there is no corroboration of the informant's statements.

In addition, it is well known that Malik received *many* benefits in exchange for his work for the government. He received substantial financial payments; he was not prosecuted on several criminal charges which included serious felonies; and he received support for both his and his wife's immigration cases. Had he not worked for the government, it is submitted that Malik probably would be serving a substantial prison term followed by deportation.

Therefore, for all of the above reasons, it is extremely important that the jury be instructed on informant credibility in this case. The Court could utilize the instruction proposed

previously by the defense, or another instruction, such as Form Instruction 7-14 in the Modern

Federal Jury Instructions, which states, in part:

> "On the other hand, where an informer testifies, as he did here, his testimony must be examined with greater scrutiny than the testimony of an ordinary witness. You should consider whether he received any benefits or promises from the government which would motivate him to testify falsely against the defendant. For example, he may believe that he will only continue to receive these benefits if he produces evidence of criminal conduct."

**Good Faith**

The government states that there is no need for an instruction on "good faith" for Mr.

Aref, and claims that there is no evidentiary support for such a charge. However, as described

below, there is strong evidentiary support for the "good faith" instruction because Yassin Aref, in

witnessing the loan between the informant and Mohammed Hossain, was only doing his duty as

an Imam under the Koran -  under those circumstances the good faith instruction should be given

whenever specific intent is an element of the offense. *United States v. Wall*, 130 F.3d 739, 746-7

(6th Cir. 1997); *United States v. Westbo*, 576 F.2d 285 (10th Cir. 1978); *Sparrow v. United States*,

402 F.2d 826, 828 (10th Cir. 1968).

It is submitted that all of the charges in the indictment carry specific intent requirements -

the 2339 charges require the intent to support a particular foreign terrorist organization and a

particular alleged terrorist plot; and the money laundering charges require willfulness, as do the

false statements charges. In fact, one of the cases cited by the government, *United States v.*

*Petrie*, 302 F.3d 1280, 1287, n. 6 (11th Cir. 2002), specifically mentions money laundering

conspiracy charges in this regard, stating, "Good faith constitutes a complete defense to the

charge of conspiracy to launder money, because it negates the mens rea element of willfulness.

..." Moreover, Form Instruction 8-1 of the Modern Federal Jury Instructions includes a proposed

good faith instruction to be used where there are false statements charges.

The Comment to Form Instruction 8.1 of the Modern Federal Jury Instructions states, at page 3, "[t]he predicate for reversal for failure to give the good faith instruction is that there be some evidence of good faith in the record." As to all of the charges arising out of the sting operation, Yassin Aref has a good faith defense because, as an Imam, he is obligated to follow the Koran and witness and record financial transactions when requested to do so, especially by members of the mosque. As will be demonstrated at trial, Surah 2:28 of the Koran provides that it is *obligatory* to witness and record financial transactions such as loans, gives quite a bit of detail on the mechanics of the witnessing and recording, and then states than an imam requested to do this *must do so.*

Therefore, since there is strong evidentiary support for a good faith instruction in this case, and because all of the charges contain specific intent requirements, the Court should include a good faith instruction. In addition, as discussed below, if there is going to be an instruction on conscious avoidance, it makes sense to include a good faith instruction as well. *See United States v. Schultz*, 333 F.3d 393 (2nd Cir. 2003)

**Conscious Avoidance**

Although sometimes utilized, conscious avoidance instructions are controversial because they have the potential to improperly allow for conviction based on negligence. *United States v. Alvarado*, 838 F.2d 311, 314 (9th Cir. 1988). Therefore, conscious avoidance instructions should be rare, and must be based on a strong factual basis. *Alvarado*, supra. Yassin Aref requests that the Court reserve on such a charge until the evidence has been presented because it is submitted that there will not be an adequate evidentiary basis to justify the charge.

4

In *United States v. Samaria*, 239 F.3d 228 (2nd Cir. 2001), the Second Circuit reversed the conviction for lack of evidence of specific intent, and didn't reach the issue of the conscious avoidance instruction, but stated:

"Even assuming that the conscious avoidance instruction given to the jury in this case was proper, any such inference could do no more than establish [defendant] Elaiho's knowledge of the criminal endeavor, not his specific intent to participate in the crimes charged. As this Court has explained:

'Application of the "conscious avoidance" theory is appropriate where the essential mental element of the crime is "guilty knowledge." *It is equally clear that the requisite mental state for conspiracy is intent, not mere knowledge. Thus, the error in the government's logic becomes obvious. If someone can consciously avoid learning of the activities and objects of a conspiracy, how can the person ever intend those events to take place?*'

*United States v. Mankani*, 738 F.2d 538, 547, n.1 (2nd Cir. 1984) (internal citations omitted); see also *United States v. Ferrarini*, 219 F.3d 145, 156 (2nd Cir. 2000) ('Even if the instructions could be construed to permit the jury to find knowing participation in the conspiracy based on conscious avoidance ... the instructions still do not permit the jury to find intent to participate in the conspiracy based on conscious avoidance.') Because the substantive offenses underlying the conspiracy charges require the specific intent to receive or possess stolen goods or commit credit card fraud, and not simply knowledge that these crimes were afoot, conscious avoidance would not provide the requisite proof needed for conviction. For the same reason, a finding of conscious avoidance will not satisfy the intent requirement for the other counts charged under 18 USC 2 (*aiding and abetting*) or 18 USC 1029(a)(2) (credit card fraud). Because we find that the government has not presented evidence sufficient to prove the requisite specific intent, we need not reach the further issue of whether conscious avoidance could have been inferred from this evidence and, if so, whether the jury was properly instructed." *Samaria*, supra, at 239-240, emphasis supplied.

In addition, in *United States v. Guevara*, 96 Fed. Appx. 745 (2nd Cir. 2004), there was a faulty conscious avoidance instruction which was not harmless error. The Court stated:

"...The district court instructed the jury that 'if you find that the defendant actually believed that the processing of the green cards was legitimate, she may not be convicted,' and finally, 'if you find that the defendant actually believed she was involved in a legitimate and legal process, she may not be convicted.' These instructions lowered the threshold for what the government needed to show. Under them, the existence of a belief that there was *no criminality of any kind* was needed to obviate conviction based on conscious avoidance. Instead, under our cases, a belief on Defendant's part that, though

criminality was involved, the criminality did not involve bribery of a public official, would suffice to require an acquittal on the counts charged. Given the closeness of the evidence in this case, we cannot say that this error was harmless. ..." *Guevara*, supra, at 748, emphasis in original.

This Circuit holds that where there is a conscious avoidance instruction, there should be balancing language allowing for good faith. *United States v. Schultz*, supra. In *Schultz*, the court gave a good faith instruction as well as a conscious avoidance instruction. The *Schultz* court stated:

> "The [district] court also gave a 'good faith' instruction and reiterated, immediately after giving the conscious avoidance charge, that Schultz could be found guilty only if the jury found that he had participated in the conspiracy 'knowing that it contemplated the acquisition and/or sale of antiquities that had been stolen from Eqypt.'" *Schultz*, at 414.

Similarly, in the recent case of *United States v. Lopoc*, 411 F. Supp.2d 350 (SDNY 2006), the court followed a conscious avoidance charge with language making it clear that a finding of conscious avoidance is not enough to convict. The court (which granted a new trial on the conspiracy charge because of lack of evidence of intent) stated:

> "...Following an instruction defining conscious avoidance, the jury was told that 'if you find that the defendant consciously avoided knowingly joining a conspiracy, it's not enough in order [to] find that one joined, you have to find knowledge and actual intent.'" *Lopoc*, supra, at 361.

While it is submitted that there is an insufficient factual showing to justify a conscious avoidance charge in this case, if the Court does decide to utilize such a charge, it should be coupled with a good faith instruction, as occurred in *Schultz*, supra. As discussed in *Samaria*, *Guevara*, *Schultz*, and *Lopoc*, supra, the jury must not be misled into believing that conscious avoidance is sufficient to meet the intent elements of any of the offenses charged herein.

Finally, the prosecution cites the recent case of *United States v. Nektalov*, 2006 WL

6

2458622 (2nd Cir. 2006), Second Circuit Docket No. 05-2780-cr, for the propriety of utilizing a conscious avoidance charge in connection with a sting operation. First, whether or not there is a factual basis for such a charge depends on the evidence presented in each case, and just because there was said to be sufficient evidence for the charge in *Nektalov* does not mean the evidence herein will support such a charge. Further, the conscious avoidance charge utilized in *Nektalov* included language requiring the jury to find *beyond a reasonable doubt* that the defendant was aware that there was a high probability that the money in question constituted the proceeds of narcotics trafficking. *Nektalov*, supra, at 6. The government's proposed conscious avoidance instruction herein does not include the "beyond a reasonable doubt" language. If the Court does decide to use a conscious avoidance charge, it should include the "beyond a reasonable doubt" language used in *Nektalov*.

Therefore, Yassin Aref requests that the Court reserve on the question of a conscious avoidance instruction until the evidence has been presented, and if the Court does decide to use such an instruction, it should be coupled with a "good faith" instruction, and should include the "beyond a reasonable doubt" language.

Dated: September 12, 2006.

S/Terence L. Kindlon
Bar Roll No. 103142
*Attorney for Yassin Aref*
74 Chapel Street
Albany, New York  12207
Telephone: (518) 434-1493
Fax: (518) 432-7806
E-mail: TKindlon@aol.com

7

_____