UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA                    Crim. No. 04-CR-402
                                             (Hon. Thomas J. McAvoy)

     -vs-

YASSIN AREF and                              Government's Sentencing Memorandum
MOHAMMAD HOSSAIN,

    Defendants.

———————————————————————

## TABLE OF CONTENTS

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.     The Legal Framework . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.     The Guidelines Calculations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     1.     The Guideline Range for Violating § 2339B is 360 Months to Life . . . 5

     2.     The Guideline Range for Violating § 2339A is 324-405 Months . . . . . 6

     3.     The Guideline Range for Violating § 1956 is 210-262 Months . . . . . . . 7

     4.     The Terrorism Enhancement Applies . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          a.     The Convictions for Violating § 2339A & § 2339B
               "Involved" Federal Crimes of Terrorism; the Object
               of the Money Laundering Offense Was to Promote
               A Federal Crime of Terrorism. . . . . . . . . . . . . . . . . . . . . . . . 8

          b.     The Offenses Were Calculated to Influence Or Affect the
               Conduct of Government By Intimidation or Coercion,
               or to Retaliate Against Government Conduct. . . . . . . . . . . . . . 9

C.     The Guidelines Apply To Sting Cases; A Downward Departure For
     Sting Cases Is Not Available . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

D.     A Sentence Within the Guidelines is Reasonable
     and Should Be Imposed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Introduction**

The Government submits this memorandum in connection with the sentencing of

defendants Aref and Hossain.  Both men were convicted of:

(a)    conspiracy to engage in money laundering, 18 U.S.C. § 1956;

(b)    conspiracy to provide material support in connection with an attack with a weapon
of mass destruction, 18 U.S.C. § 2339A; and

(c)    conspiracy to provide material support to a designated terrorist organization, 18
U.S.C. § 2339B.

In addition, Hossain was convicted of ten counts of money laundering, seven counts of providing

material support in violation of § 2339A, and seven counts of providing material support in

violation of § 2339B.  Aref was convicted of two counts of money laundering, two counts of

providing material support in violation of § 2339A, two counts of providing material support in

violation of § 2339B, and one count of making a false statement.  These convictions result in the

following Sentencing Guidelines ranges:

| Statute | Guideline Range | Defendant |
|---------|-----------------|-----------|
| 18 U.S.C. § 2339B | 360 Months to Life | Aref and Hossain |
| 18 U.S.C. § 2339A | 324 - 405 Months | Aref and Hossain |
| 18 U.S.C. § 1956 | 210 - 262 Months | Aref and Hossain |
| 18 U.S.C. § 1001 | 0 - 6 Months | Aref |

This Court must determine whether (a) to impose Guidelines sentences within the ranges

set forth above, (b) to depart (upward or downward) from the calculated guidelines ranges, or

(c) to impose a non-Guidelines sentence.  See United States v. Rattoballi, 452 F.3d 127, 131 (2d

Cir. 2006); United States v. Anati, 457 F.3d 233, 236-37 (2d Cir. 2006).  For reasons explained

below, this Court should impose Guidelines sentences within the ranges set forth above.

1

**A.      The Legal Framework**

Sentencing is governed by 18 U.S.C. 3553(a), which provides (in applicable part):

(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider-

>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   (2) the need for the sentence imposed-
>
>>   (A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>   (B)      to afford adequate deterrence to criminal conduct;
>>   (C)      to protect the public from further crimes of the defendant;
>>   (D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3) the kinds of sentences available;
>
>   (4) the kinds of sentence and the sentencing range established for-
>
>>   (A)      the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-
>>
>>>   (i) issued by the Sentencing Commission . . .
>>>   (ii) that . . . are in effect on the date the defendant is sentenced
>>
>>   *      *      *      *      *      *      *
>
>   (5) any pertinent policy statements-
>
>>   (A) issued by the Sentencing Commission . . .
>>   (B) that . . . are in effect on the date the defendant is sentenced
>
>   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>   (7) the need to provide restitution to any victims of the offense.

2

All forms of sentencing, – regardless of whether within the Guidelines range, a departure, or a non-Guidelines sentence – "start with a calculated Guidelines range." See United States v. Anati, 457 F.3d 233, 236-37 (2d Cir. 2006).  Properly calculated guidelines ranges "should serve as a benchmark or a point of reference or departure for the review of sentences." United States v. Rubenstein, 403 F.3d 93, 98-99 (2d Cir. 2005).  The Circuit "will view as inherently suspect a non-Guidelines sentence that rests primarily upon factors that are not unique or personal to a particular defendant, but instead reflects attributes common to all defendants." United States v. Rattoballi, 452 F.3d 127, 133 (2d Cir. 2006).  Moreover, the Sentencing Commission's policy statements are entitled to deference, and a "non-Guidelines sentence that a district court imposes in reliance on factors incompatible with the Commission's policy statements may be deemed substantively unreasonable in the absence of persuasive explanation as to why the sentence actually comports with the § 3553(a) factors." Id. at 134.

A non-Guidelines sentence is unreasonable in various circumstances, including when unjustified reliance is placed on one section 3553(a) factor not unique to a defendant, when a sentence reflects a general policy disagreement with the Guidelines, or when a sentence is based on a consideration not included in section 3553(a). See United States v. Trupin, 2007 WL 162710 (2d Cir. Jan. 23 2007) (Slip Opinion at 7).  For example, while separation from one's family is certainly an appropriate consideration, it is common to many (and perhaps most) defendants, and does not in and of itself warrant a non-Guidelines sentence. See id. at 7-8 ("Moreover, the separation of Trupin from his wife caused by incarceration is not sufficiently unique to Trupin, but rather is true of every married defendant who runs afoul of the law and is then separated from his family.  While tragic, it is a tragedy of Trupin's making.")

3

While this Circuit does not follow the rule, employed in some other circuits, that accords a presumption of reasonableness to a within-Guidelines sentence, and "that requires district courts to offer a more compelling accounting the farther a sentence deviates from the advisory Guidelines range," Rattoballi, 452 F.3d at 134,[1] this Circuit will look to the district court to provide a "compelling statement of reasons that reflect consideration of §3553(a) and set forth why it was desirable to deviate from the Guidelines."  Id. at 135.

Where a court is considering departing from the Guidelines, notice and an opportunity to comment must be provided to counsel, Burns v. United States, 501 U.S. 129, 135 (1991), including notice to the government of an intent to depart downward.  United States v. Nuzzo, 385 F.3d 109, 120 (2d Cir. 2004); United States v. Thorn, 317 F.3d 107, 129 (2d Cir. 2003) ("Before sentence is imposed, the district court must give the government notice of the court's intention to depart, including the factors that the judge is planning to rely upon, and some brief explanation as to why these factors warrant a departure, and an opportunity to be heard as to why the contemplated departure is unwarranted.")

The Second Circuit has held that this same rule – notice followed by an opportunity for counsel to comment – applies when a court is considering imposing a non-Guidelines sentence. United States v. Anati, 457 F.3d 233, 236 (2d Cir. 2006).

---

[1]   The Supreme Court has granted certiorari to answer the question whether to accord a presumption of reasonableness to within-Guidelines sentences.  See United States v. Rita, 177 Fed. Appx. 357 (4th Cir.), pet. cert. granted, 127 S.Ct. 551 (2006).

B.      **The Guidelines Calculations**

1.      **The Guideline Range for Violating § 2339B is 360 Months to Life**

The Sentencing Guidelines Manual specifies that for a violation of 18 U.S.C. § 2339B,

the applicable guideline is U.S.S.G. § 2M5.3 ("Providing Material Support or Resources to

Designated Foreign Terrorist Organization or for Terrorist Purposes"), which results in the

following scoring:

| | |
|---|---|
| § 2M5.3(a) Base Offense Level | 26 |
| § 2M5.3(b)(1) Specific Offense Characteristic ("If the offense involved the provision of . . . (E) funds or other material support or resources with the intent, knowledge, or reason to believe they are to be used to commit or assist in the commission of a violent act, increase by two levels.") | + 2 |
| § 3A1.4(a) Terrorism Enhancement ("If the offense is a felony that involved, or was intended to promote, a federal crime of Terrorism, increase by twelve levels; but if the resulting offense level is less than level 32, increase to level 32.") | + 12 |
| § 3A1.4(b) Terrorism Enhancement ("In each such case, the defendant's criminal history from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.") | Category VI |
| Adjustment for Acceptance of Responsibility | None[2] |
| | ———— |
| | 40 Category VI |

The Guidelines Range for Level 40, Criminal History Category VI is  360 months to life.

_____

    [2]    While it is an open question in this Circuit whether one who raises an entrapment defense at trial is precluded as a matter of law from receiving an acceptance of responsibility adjustment, see United States v. Taylor, 2007 WL 162706 (2d Cir. Jan. 23, 2007) (Slip Opinion at 7-8) (citing cases from other circuits), where, as here, the defendant refuses to speak to Probation about his criminal conduct and demonstrates a lack of contrition, the adjustment is properly withheld. Id. at 8-9.

## 2. The Guideline Range for Violating § 2339A is 324-405 Months

The Sentencing Guidelines Manual specifies that for a violation of 18 U.S.C. § 2339A, the applicable guideline is U.S.S.G. § 2X2.1 or § 2X3.1. Those provisions in turn direct that the offense level is the same as that for the underlying offense. Here, the underlying offense charged was 18 U.S.C. § 2332a, which specifies either U.S.S.G. § 2K1.4 or § 2M6.1. (We believe that § 2M6.1, which is the higher guideline, does not apply, because the definition of weapon of mass destruction in Application Note 1 excludes the subsection of § 2332a charged in the indictment.) Application of U.S.S.G. § 2K1.4 results in the following scoring:

| | |
|---|---|
| § 2K1.4 Base Offense Level | 24 |
| § 3A1.4(a) Terrorism Enhancement ("If the offense is a felony that involved, or was intended to promote, a federal crime of Terrorism, increase by twelve levels; but if the resulting offense level is less than level 32, increase to level 32.") | + 12 |
| § 3A1.4(b) Terrorism Enhancement ("In each such case, the defendant's criminal history from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.") | Category VI |
| Adjustment for Acceptance of Responsibility | None |
| | 36 Category VI |

The Guidelines Range for Level 36, Criminal History Category VI is 324-405 months.

### 3.    The Guideline Range for Violating § 1956 is 210-262 Months

The Sentencing Guidelines Manual specifies that for a violation of 18 U.S.C. § 1956, the

applicable guideline is U.S.S.G. § 2S1.1, which results in the following scoring:

| | |
|---|---|
| § 2S1.1(a)(2) Base Offense Level (8 + the number of levels from the table in 2B1.1 corresponding to the value of the laundered funds)  (More than $30,000 and less than $70,000) | 8<br>+ 6 |
| § 2S1.1(b)(1) Specific Offense Characteristic ("If the defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote . . .<br>(ii) a crime of violence, or (iii) an offense involving firearms, explosives, national security, or the sexual exploitation of a minor, increase by 6 levels | + 6 |
| § 3A1.4(a) Terrorism Enhancement ("If the offense is a felony that involved, or was intended to promote, a federal crime of Terrorism, increase by twelve levels; but if the resulting offense level is less than level 32, increase to level 32.") | +12 |
| § 3A1.4(b) Terrorism Enhancement ("In each such case, the defendant's criminal history from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.") | Category VI |
| Adjustment for Acceptance of Responsibility | None |
| | _____ |
| | 32 Category VI |

The Guidelines Range for Level 32, Criminal History Category VI is  210-262 months.[3]

_____

[3]    U.S.S.G. § 2B1.1 applies to Aref's false statement conviction, resulting in an offense level of 6, and a guideline range of 0-6 months.

### 4.     The Terrorism Enhancement Applies

The Terrorism Enhancement, U.S.S.G. § 3A1.4 applies:

(a)     If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels, but if the resulting offense level is less than 32, increase to level 32.

(b)     In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

Pursuant to Application Note 1, "'Federal crime of terrorism' has the meaning given that term in 18 U.S.C. § 2332b(g)(5)."  That provision contains a two part definition: (1) the crime must be "an offense that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;" and (2) the crime must be listed in  § 2332b(g)(5)(B).

### a.     The Convictions for Violating § 2339A and § 2339B "Involved" Federal Crimes of Terrorism; the Object of the Money Laundering Offense Was to Promote A Federal Crime of Terrorism

Both § 2339A and § 2339B are listed in § 2332b(g)(5), and therefore, the convictions for those offenses "involved" federal crimes of terrorism.  See United States v. Arnaout, 431 F.3d 994, 1001 (7th Cir. 2005) ("where a defendant's offense or relevant conduct includes a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5), then § 3A1.4 is triggered."); United States v. Mandhai, 375 F.3d 1243, 1247 (11th Cir. 2004) (term "involved" means to "include"); United States v. Graham, 275 F.3d 490, 516 (6th Cir. 2001) (word "involved" "signifies that a defendant's offense included a federal crime of terrorism; in other words, that a defendant committed, attempted, or conspired to commit a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5).").

8

Since 18 U.S.C. § 1956 is not listed in § 2332b(g)(5)(B), this offense does not "involve" a federal crime of terrorism.  Nonetheless, the terrorism enhancement is properly applied to the money laundering convictions under the "intended to promote" prong of the enhancement's language "if the purpose or intent of the defendant's substantive offense of conviction or relevant conduct was to promote a federal crime of terrorism."  United States Arnaout, 431 F.3d 994, 1000-01 (7th Cir. 2005); United States v. Mandhai, 375 F.3d 1243, 1247 (11th Cir. 2004); United States v. Graham, 275 F.3d 490, 517 (6th Cir. 2001) (phrase "intended to promote" "implies that the defendant has as one purpose of his substantive count of conviction or his relevant conduct the intent to promote a federal crime of terrorism").

Here the money laundering counts allege that the funds being laundered were proceeds from the sale of a Surface to Air Missile, which, as described above, was to be used in an attack by Jaish-e-Mohammad in New York.  The circumstances here easily satisfy the promotion prong.

> **b.**  **The Offenses Were Calculated to Influence Or Affect the Conduct of Government By Intimidation or Coercion, or to Retaliate Against Government Conduct**

Statements the CW made on multiple occasions satisfy the requirement that the offense was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."  See United States v. DeAmaris, 406 F.Supp. 2d 748, 750 (S.D.Tex. 2005) (term "government" as used in § 2332b(g)(5) includes both U.S. and foreign governments).  Thus, on November 20, 2003 the CW showed Hossain the Surface to Air Missile, and told him, inter alia, "this is for destroying airplanes," "this comes for our mujahid brothers," "Today it's going to New York."  Tr. 11/20, p. 4, l. 11-20.  On February 3, 2004, the CW told Hossain, "we use a code word for the business that we do.  Those missiles and stuff, there is a

code word for that.  The missiles and stuff, right.  We have a code word for it.  We call it "chaudry." "Chaudry." You understand, right?" Tr. 2/3 p. 12, lls. 15-17.  The CW then told Hossain, "So, next week, I have to give Mr. "Chaudry" to him, to the ambassador [UI phrase].  I have to give it to the Ambassador." Id. p. 13, lls. 1-3.  Finally, on February 12, 2004, as Kassim Shaar testified, the CW told both Aref and Hossain that "there was an attack coming to New York City, a missile attack coming there." Trial Tr. at 328.

With regard to Aref, on January 14, 2004, the CW told Aref: "I help my, my brother mujahideen with ammunition and stuff like that to fight the wars, Holy Wars;" Tr. 1/14, p. 14, lls. 16-18; that the CW was working with Jaish-e-Mohammad; id. at 22-23; and that:

> He's in Pakistan right now, and he's trying to liberate Kashmir from India. And, uh, he's been fighting the Holy War for almost now, so many years and we're we are trying to help him in that war.  And this President Mushareff, the President of Pakistan is, uh, is against him and, uh, against the Holy War because he's helping the Mushriq, uh, and uh, we are fighting him. Too.  Uh, that's why the missile, that we sent it to New York City to teach Mu, uh President Mushareff the lesson to not to fight with us.

Id. at p. 15, lls 2-14.

Aref was present on February 12, 2004 when the CW, in the presence of Kassim Shaar, told both Aref and Hossain that "there was an attack coming to New York City, a missile attack coming there." Trial Tr. at 328.  Aref himself admitted that on February 12 the CW warned there would be an attack in New York City the next week.  Aref testified that he didn't hear the word "missile," but he understood attack to mean to "bomb somewhere or fight something."  Aref did not report the warning to the FBI or other authorities because he was "hundred percent sure that's lie, that's not true."  Trial Tr. at 1600-03.  Aref denied patting the CW down in search of a recording device.  Id.  On March 2, 2004, the CW brought the subject up again with Aref:

CW      Well, I'm, because the, the other day because I told you something, brother, in front of Kassim, I should not say you that do not go to New York City because of uh, something happening to the Consulate, you know.

Aref    Yeah, that's very dangerous.

CW:     I told you and uh because then we, we have to change it because the Consulate didn't show up but that's another story.

Tr. 3/2 p. 9, lls. 4-10.

Finally, on June 10, 2004, in response to Aref's request for a loan, the CW again brought

up the planned attack:

CW:     Remember that, uh, you remember that, uh, it was a month ago we wanted to, that Chaudry was going to New York to make that money, but it didn't use. So I, I, this, when it happens, I have to leave this country for two months, and then, you know, I'll just go away.

Aref:   No problem, no problem, that's no problem.

CW:     So, and then, two months I, I have to go, because if they use the chaudry on 142, then I have got a problem.

Tr. 6/10 p. 34, lls. 12-21.

As thus described by the CW to Aref and Hossain, the purpose of the planned attack in

New York City with the Surface to Air Missile was calculated to influence or affect the conduct

of government by intimidation or coercion and to retaliate against government conduct.

    **C.      The Guidelines Apply To Sting Cases;**
                 **A Downward Departure For Sting Cases Is Not Available**

The Guidelines do not provide any reductions in sentencing -- either through an

adjustment or a departure -- for sting cases. In addition, there is no "sting exception" for the

terrorism enhancement.

11

Sting operations necessarily rely on facts developed by the government, but the government's role in fashioning facts in sting cases does not affect the application of the Guidelines. This is because defendants necessarily adopt the facts when they decide to participate in the criminal opportunity offered by the government. See United States v. Caban, 173 F.3d 89, 93 (2d Cir. 1999)(affirming district court's refusal to depart downward where government controlled how much cocaine was involved because, among other reasons, defendant continued to participate knowing how much cocaine was involved); United States v. Nobles, 199 F.3d 1324, 1999 WL 1012817 *2 (2d Cir. 1999) ("We agree with the district court that the government 'has the right to switch from a request for cocaine to a request for crack,' and 'does have the power to take someone who is offending the law in one regard and see if they are interested in violating the law in another regard.' . . . This is all that occurred here."); United States v. Gomez, 103 F.3d 249, 256-57 (2d Cir. 1997)(affirming district court's refusal to depart downward where defendant complained that he did not have enough money to buy the 125 grams of heroin the CI offered to sell and that the CI had convinced him to sell guns with a "gratuitously interjected" statement); United States v. Wagner, 467 F.3d 1085, 1090 (7th Cir. 2006)(affirming application of enhancement for filing serial numbers off guns before trading them to drug dealers where CI made those representations and observing "[t]he government is not the cause of the predicament in which Wagner finds himself; he is"); United States v. Hale, 448 F.3d 971, 989 (7th Cir. 2006)(affirming sentence imposed by district court judge following sting operation where FBI informant repeatedly offered to arrange for murder of federal judge who had ruled against defendant in an earlier civil case); United States v. Williams, 456 F.3d 1353, 1370-71 (11th Cir. 2006) ("There is no question Williams' arrest and conviction was the

result of a valid sting operation and the DEA no more 'snared' Williams or engaged in sentencing factor manipulation than in any other sting operation.  To say a district court may factor into a crack cocaine offender's sentence the bare fact that the Government chose to purchase crack instead of powder cocaine, without more, would undermine Congress's policy of punishing crack cocaine offenders more severely and impermissibly interfere with the executive branch's performance of legitimate law enforcement practices.  Contrary to the district court's conclusion, it does not promote respect for the law to imply government misconduct from the mere fact that the Government chose to purchase crack cocaine from a crack dealer instead of any other controlled substance.  To the extent the district court considered this fact as a mitigating consideration, it erred as a matter of law.").

Efforts to reduce sentences based upon allegations of "sentencing entrapment," "imperfect entrapment, " or "sentencing manipulation" have been rejected.  See United States v. Bala, 236 F.3d 87, 92-93 (2d Cir. 2000) ("the district court would have abused its discretion had it applied imperfect entrapment to justify a downward departure in this [money laundering sting] case" and even assuming that so-called "sentencing entrapment" or "sentencing manipulation" were a valid ground for departure, arrangement of fourth money laundering transaction after obtaining indictment for three transactions was not "outrageous" government conduct); see also United States v. Sanchez 138 F.3d 1410, 1415 (11th Cir. 1998) ("The fact that the government's fictitious reverse sting operation involved a large quantity of drugs does not amount to the type of manipulative governmental conduct warranting a downward departure in sentencing."); United States v. Bohannon, 2006 WL 3771047, *5 (11th Cir. 2006)(rejecting, in a sting case in which an undercover officer represented that he was a 15 year-old-girl, the argument that "because the

13

undercover officer selected the victim's age in the context of a sting operation, the enhancement based on the age of the victim constituted impermissible 'sentencing manipulation'").

Moreover, the terrorism enhancement applies regardless of whether defendants had any real ability to carry out their planned attacks.  "[T]he terrorism enhancement does not hinge upon a defendant's ability to carry out specific terrorist crimes or the degree of separation from their actual implementation.  Rather, it is the defendant's purpose that is relevant, and if that purpose is to promote a terrorism crime, the enhancement is triggered."  United States v. Mandhai, 375 F.3d 1243, 1248 (11th Cir. 2004). Thus, the enhancement is applied even when a defendant "lack[s] both the means and the ability to carry out his defined activity without assistance."  Id. at 1248.[4]  See also United States v. Hale, 448 F.3d 971, 989 (7th Cir. 2006) (affirming application of terrorism enhancement following sting operation).

> **D.    A Sentence Within the Guidelines is Reasonable and Should Be Imposed**

The facts in this case are chilling.  Defendants believed the CW imported Surface to Air Missiles for a terrorist group in New York, and they later learned that the group was about to use a Surface to Air Missile in an attack against an ambassador in New York City.  If such an attack had been carried out successfully, the effects would have been devastating, likely causing deaths, injuries, property damage, and untold suffering.

Despite the obvious and horrible consequences foreseeable from assisting someone who was providing weapons to terrorists, defendants took no action whatsoever to stop or impede the

---

[4]    The Court of Appeals did remand the matter after concluding that "a sentencing range of 188 to 235 months is excessive for the crime Mandhai committed," based on findings that other members of the conspiracy were not charged, defendant had second thoughts but was kept in by seasoned adults, and defendant withdrew after being confronted by government agents.  375 F.3d at 1250-51.  No facts such as these are present here.

CW in his activities.  They could have used business cards that they had received from the FBI to report the CW's activities.  They did not, instead choosing to warn the CW about the FBI.  Tr. 12/2, p. 7, lls. 20-21; Tr. 12/5, p. 4, lls. 1-5 (Hossain stating, during a conversation about FBI Special Agent Timothy Coll,  "the walls have ears") and Tr. 1/14, p. 17, lls. 14-22 (Aref stating, "**And now if they know any person, he have link with those people** by giving them the money especial, cause now it is the best thing they do in Saudi Arabia, in Kuwait, and you've got all that, gulf, and Arab country, it is that, to find out those people, even if they give the zakat for these organization, **they take them to the jail and they say they support the what, the terrorism**.").

They could have counseled the CW against working with such a group.  They did not; indeed, Aref offered the CW encouragement.  See, e.g., Tr. 1/14, p. 19, lls. 11-15 (Aref stating, during a conversation about JEM, "if you know them, you trust them and you believe they are doing right, and you believe they are fearing Allah, and you believe they are working for Allah, I believe it is wise for you to help if you can.").  Aref's encouragement was tempered by his warning about the consequences "if they find any link between you and that group [JEM], you should to know, you are going to be in the trouble."  Tr. 1/14, p. 58, lls. 3-5.

They could have at least refused to assist the CW.  They did not, instead choosing to launder money from the sale of a missile to terrorists.  Indeed, Aref was so enamored with the CW that he sought to become his business partner.  It is because of these choices -- choices never changed during the eight months of the sting -- that defendants are before this Court for sentencing.

Here, as the evidence showed at trial, Hossain's motivation for involving himself was primarily greed.  His actions, as did those of the defendant in Bala, 236 F.3d at 92-93, fall well within the heartland of sting cases.

The evidence at trial also showed that Aref's primary motivation was ideology (although his request that the CW become his business partner showed that later on greed also was of some influence).  Aref's ideology of support for Muslims – even terrorists – if they are doing what is perceived to be Allah's will, is appropriately considered in sentencing him,[5] and arguably could justify an upward departure.  Cf. United States v. McAninch, 994 F.2d 1380, 1388 (9th Cir. 1993) (defendant's racial motivation in committing offense valid ground for upward departure); see also United States v. Stewart, 65 F.3d 918, 931 (11th Cir. 1995) ("The defendant's complain about the court's remarks and argue that their sentences were affected by their ideology. . . . Even if the district court had factored the racist attitudes behind the crime into the sentences imposed, we seriously doubt that it would have been error.").

The Guidelines reflect the Sentencing Commission's measured conclusions about what a reasonable sentence is under circumstances such as those involved here.  There are no facts or circumstances which make the Commission's conclusion unreasonable in this case.[6]  Indeed, given the nature of the plot, a sentence outside the Guidelines would be unreasonable.

---

[5]    This ideology was reflected not only in Aref's statements to the CW, but also in numerous diary entries.  The diary included entries recording Aref's meetings with known terrorists, discussions of terrorist groups, and expressions of support for terrorists and their causes.

[6]    Neither the absence of prior criminal convictions nor their family circumstances justify a departure or a non-Guidelines sentence because these common factors "are neither sufficiently compelling nor present to the degree necessary," see United States v. Rattoballi, 452 F.3d at 137.

16

**Conclusion**

We submit that after considering the calculated Guidelines range along with other

§ 3553(a) factors, that a sentence within the Guidelines range is reasonable and should be

imposed.  See United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006) ("we recognize that in

the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad

range of sentences that would be reasonable in the particular circumstances.").


Dated: January 29, 2007                          Respectfully submitted,

                                                 GLENN T SUDDABY
                                                 UNITED STATES ATTORNEY

                              by:        /s/
                                         William C. Pericak
                                         Elizabeth C. Coombe
                                         Assistant U.S. Attorneys


17