**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

-against-                                                                                      04-CR-402

**YASSIN MUHIDDIN AREF**
**and MOHAMMED MOSHARREF HOSSAIN**,

                               **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I. INTRODUCTION**

      Defendant YASSIN MUHIDDIN AREF ("Aref") was charged in each of thirty (30) counts in Superseding Indictment 04-CR-402 (N.D.N.Y.) with various violations of 18 U.S.C. §§ 1956(a)(3), 2339A, 2339B, 1546, 1001 & 2. Following a four-week jury trial, Aref was convicted of ten (10) of the thirty (30) counts with which he was charged. The facts underlying the allegations and convictions in this matter are set forth in the Court's February 22, 2004 Memorandum, Decision and Order addressing the defendants' post-trial motions. See 2/22/07 Mem., Dec. & Ord, dkt. # 440; United States v. Aref, 2007 WL 603508 (N.Y.N.D. Feb. 22, 2007). The Court assumes familiarity with that Memorandum, Decision and Order. Aref was sentenced on March 8, 2004, and this Memorandum, Decision and Order constitutes the Court's written decision of reasons for

1

the sentence imposed.

## II. FACTUAL BACKGROUND

As stated on the record at the time of sentencing, the Court has reviewed and considered all pertinent information including, but not limited to, the Presentence Investigation Report and addendum ("PSR"); submissions by counsel; the factors outlined in 18 U.S.C. § 3553; and the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines").[1] The Court adopts the factual information contained in the PSR and, as also stated on the record at the time of sentencing, gives Aref an exception to the factual content of the PSR.

## III. GUIDELINE CALCULATION

### A. § 2339B Offenses

The Court starts by addressing the Guidelines' calculation for Aref's convictions on Counts 20, 26, and 27. On these counts, Aref was convicted of one count of conspiracy to provide material support to a designated terrorist organization in violation of 18 U.S.C. § 2339B, and two counts of attempting, or aiding and abetting an attempt, to provide material support to a designated terrorist organization in violation of 18 U.S.C. §§ 2339B and 2. The United States Sentencing Guidelines Manual specifies that for violations of 18 U.S.C. § 2339B, the applicable guideline is U.S.S.G. § 2M5.3.

Under § 2M5.3(a), the Base Offense Level is 26. Section 2M5.3(b)(1), Specific Offense Characteristic, provides that "[i]f the offense involved the provision of . . . (E) funds or other material support or resources with the intent, knowledge, or reason to

---

[1]The 2006 edition of the Guidelines Manual has been used in this case.

2

believe they are to be used to commit or assist in the commission of a violent act, increase by 2 levels." The facts at trial established that the material support in issue, that is, the laundering of funds from the confidential witness's ("CW") purported illegal importation of a Surface-to-Air Missile ("SAM"), was aided and abetted by Aref with the intent, knowledge, and belief that the SAM would be used in an attack on the Pakistani Ambassador in New York City. Thus, the offenses clearly involved the provision of material support with the intent, knowledge, or reason to believe that the material support would assist in the commission of a violent act. Accordingly, two points are added to the offense level.

Section 3A1.4 of the Guidelines, the terrorism enhancement, provides at subsection (a) that "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32." This enhancement provides at subsection (b) that "[i]n each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI."

Pursuant to Application Note 1 of U.S.S.G. § 3A1.4, a "'[f]ederal crime of terrorism' has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." That provision contains a two part definition: (1) the crime must be "an offense that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;" and (2) the crime must be listed in § 2332b(g)(5)(B). Both § 2339A, which is addressed next, and § 2339B are listed in § 2332b(g)(5)(B). Further, based upon statements by the CW during the course of the criminal venture, the evidence established that Aref committed the crimes believing that Jaish-e-Mohammad ("JEM"), the group that purportedly received the SAM, was intending to deploy it against the Pakistani

3

Ambassador in order to teach the President of Pakistan a lesson. Thus, the evidence was sufficient to establish that the § 2339B offenses involved a federal crime of terrorism that was calculated to influence or affect the conduct of a government by intimidation or coercion, or to retaliate against government conduct. See United States v. Arnaout, 431 F.3d 994, 1001 (7th Cir. 2005)("where a defendant's offense or relevant conduct includes a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5), then § 3A1.4 is triggered."); United States v. Mandhai, 375 F.3d 1243, 1247 (11th Cir. 2004)("involved" means to "include"); United States v. Graham, 275 F.3d 490, 516 (6th Cir. 2001)(The word "involved" "signifies that a defendant's offense included a federal crime of terrorism; in other words, that a defendant committed, attempted, or conspired to commit a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)."); see also United States v. Hale, 448 F. 3d 971, fn. 1 (5th Cir. 2005)("The definition of 'federal crime of terrorism' appears within a statutory section entitled 'Acts of terrorism transcending national boundaries,' . . . ." ); United States v. DeAmaris, 406 F. Supp.2d 748, 750 (S.D. Tex. 2005)(The term "government" as used in § 2332b(g)(5) includes both U.S. and foreign governments.). Therefore,12 levels are added under the terrorism enhancement, bringing the offense level to 40.

For the reasons set forth in the Presentence Report at paragraphs 84, 85, and 87, the Court finds that no other adjustments are warranted for the offense level. With regard to an obstruction of justice enhancement pursuant to § 3C1.1 of the Guidelines, the Court does not find that the enhancement applies simply because Aref chose to testify in his own behalf at trial. As evidenced by the guilty verdicts on some but not all of the counts, the jury evidently chose not to credit all of his testimony. However, this does not establish

that he gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993).  Accordingly, the total offense level for the § 2339B convictions is 40.

Turning to criminal history, the application of the terrorism enhancement results in a presumptive criminal history category of VI for Aref.  While the Second Circuit has held that "Congress and the Sentencing Commission had a rational basis for creating a uniform criminal history category for all terrorists under § 3A1.4(b)," the Circuit also noted in the same case that the district court "always has the discretion under § 4A1.3(b) to depart downward in sentencing." United States v. Meskini, 319 F.3d 88, 92 (2d Cir. 2003).  Thus, even where the terrorism enhancement applies, a horizontal departure on criminal history is warranted under § 4A1.3(b) if a criminal history category of VI substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.

The Court finds that a criminal history category of VI does substantially over-represent the seriousness of Aref's criminal history. As indicated in the PSR at paragraphs 91-94,  Aref has had no prior criminal adjudications and received zero total criminal history points as scored by the United States Probation Department.  The credible and reliable evidence indicates that Aref came to this county with his family with a limited understanding of the English language and provided for his family until his arrest through lawful employment in various capacities.  The information available to the Court indicates that he has been a good father and husband, and there is no indication that he has engaged in any other criminal activity in this country.  Further, as indicated in the

5

Presentence Report, Aref has been an imam at the local mosque in which capacity he has been a spiritual leader for many members of the community in Albany, New York. His positive impact on numerous members of the community is evidenced by the letters submitted on Aref's behalf. Based upon Aref's lack of prior criminal history, and his personal characteristics, the Court finds his circumstances to be extraordinary and that a downward departure is warranted to a criminal history category of I.

Pursuant to U.S.S.G. Chapter 5, Part A, based on a total offense level of 40 and a criminal history category of I, the Guideline range of imprisonment for the § 2339B convictions is 292 to 365 months. Pursuant to 18 U.S.C. § 2339B, the statutory maximum term of imprisonment for the § 2339B convictions is 180 months.

**B.  § 2339B Offenses**

The Court next turns to Count 12, upon which Aref was convicted of conspiracy to conceal or disguise the nature, location source or ownership of material support or resources in connection with an attack with a weapon of mass destruction on a person or property within the United States, in violation of 18 U.S.C. § 2339A; and Counts 18 and 19, upon which Aref was convicted of two substantive counts of attempting, or aiding and abetting an attempt, to conceal or disguise the nature, location source or ownership of material support or resources in connection with an attack with a weapon of mass destruction on a person or property within the United States, in violation of 18 U.S.C. §§ 2339A & 2.

For a violation of 18 U.S.C. § 2339A, the applicable Guideline sections are § 2X2.1 or § 2X3.1. These provisions, in turn, direct that the offense level is the same as that for

the underlying offense. The underlying offense charged in these counts is a violation of 18 U.S.C. § 2332a, the unauthorized use of a weapon of mass destruction on a person or property within the United States. A Guideline sentence for a violation of § 2332a is determined using either U.S.S.G. § 2K1.4 or § 2M6.1. Section 2M6.1, which is the higher guideline, does not apply because the definition of weapon of mass destruction in Application Note 1 excludes the subsection of § 2332a that is charged in the Superseding Indictment.

Under U.S.S.G. § 2K1.4, the base offense level is 24. For the reasons discussed above, the terrorism enhancement of U.S.S.G. § 3A1.4 applies to the § 2339A convictions, resulting in a 12 point increase to an offense level of 36. Also for the reasons discussed above, the Court finds that no adjustments apply, and that a downward departure to Criminal History Category I is warranted in this case.

Pursuant to U.S.S.G. Chapter 5, Part A, based on a total offense level of 36 and a criminal history category of I, the guideline range for imprisonment for the § 2339A convictions is 188 - 235 months. Pursuant to 18 U.S.C. § 2339A, the statutory maximum term of imprisonment for the § 2339A convictions is 180 months.

### C.  18 U.S.C. § 1956

Aref was also convicted of conspiracy and two substantive offenses of money laundering in violation of 18 U.S.C. § 1956. See Superseding Indictment Counts 1, 10 & 11. The Guidelines Manual specifies that for violations of 18 U.S.C. § 1956, the applicable guideline is U.S.S.G. § 2S1.1. Under § 2S1.1(a)(2), the base offense level for these convictions is eight plus the number of levels from the table in U.S.S.G. § 2B1.1

corresponding to the value of the laundered funds. Because the value of the laundered funds in this case was more than $30,000 and less than $70,000, six additional levels are added.

As to specific offense characteristics, U.S.S.G. § 2S1.1(b)(1) provides that "[i]f the defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote . . . (ii) a crime of violence, or (iii) an offense involving firearms, [or] explosives . . . , increase by 6 levels." The evidence established that Aref believed that the laundered funds were the proceeds of the illegal importation of a firearm or explosive, and that he believed that money laundering scheme was intended to promote a crime of violence involving the use of a firearm or explosive. Accordingly, six additional levels are added to the offense level.

Next is the question of whether the terrorism enhancement of U.S.S.G. § 3A1.4 applies to the money laundering convictions. As indicated above, in order for this enhancement to apply, the offense must be a felony "that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a). Application Note 1 to U.S.S.G. § 3A1.4(a) provides that a "'[f]ederal crime of terrorism' has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." Under Section 2332b(g)(5), the crime must be (1) "an offense that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;" and (2) listed in § 2332b(g)(5)(B).

Since 18 U.SC. § 1956 is not listed in § 2332b(g)(5)(B), this offense does not "involve" a federal crime of terrorism. Nonetheless, the terrorism enhancement is properly applied to the money laundering convictions under the "intended to promote" prong of the

8

enhancement's language "if the purpose or intent of the defendant's substantive offense of conviction or relevant conduct was to promote a federal crime of terrorism." United States v. Arnaout, 431 F.3d 994, 1000-01 (7th Cir. 2005); see also United States v. Hale, 448 F. 3d 971, 988 (5th Cir. 2005)("That Hale did not commit a federal crime of terrorism is irrelevant; the district court found that the purpose of his soliciting Evola was *to promote* a federal crime of terrorism - the murder of a federal officer or employee.")(emphasis in original); United States v. Mandhai, 375 F.3d 1243, 1247 (11th Cir. 2004)("Under a plain reading, the phrase 'intended to promote' means that if a goal or purpose was to bring or help bring into being a crime listed in 18 U.S.C. § 2332b(g)(5)(B), the terrorism enhancement applies."); United States v. Graham, 275 F.3d 490, 517 (6th Cir. 2001)(The phrase "intended to promote" "implies that the defendant has as one purpose of his substantive count of conviction or his relevant conduct the intent to promote a federal crime of terrorism.").

    Here, the evidence established that Aref believed that the funds being laundered were the proceeds from the sale of a SAM that was to be used in an attack on the Pakistani Ambassador by JEM to teach the President of Pakistan a lesson. Thus, the evidence was sufficient to established that, through the money laundering scheme, Aref intended to promote a federal crime of terrorism that was calculated to influence or affect the conduct of a government by intimidation or coercion, or to retaliate against government conduct. Accordingly, the terrorism enhancement applies to the § 1956 convictions, bringing the total offense level to 32. For the reasons set forth above, no additional adjustments are warranted, and the Court finds that a downward departure to criminal history category I is warranted.

Pursuant to U.S.S.G. Chapter 5, Part A, based on a total offense level of 32 and a criminal history category of I, the guideline range for imprisonment for the § 1956 convictions is 121-151 months.  Pursuant to 18 U.S.C. § 1956, the statutory maximum term of imprisonment for the § 1956 convictions is 240 months.

### D.  18 U.S. C. § 1001

On Count 30, Aref was convicted of making a false statement to the FBI in violation of 18 U.S.C. § 1001.  Under U.S.S.G. § 2B1.1(a), the base offense level for this crime is six.  No specific offense characteristics from 2B1.1(b) apply.  Again, the Court applies a Criminal History Category of I.  Pursuant to U.S.S.G. Chapter 5, Part A, based on a Total Offense Level of 6 and a Criminal History Category of I, the Guideline range for imprisonment for Count 30 is 0-6 months.  Pursuant to 18 U.S.C. § 1001, the statutory maximum term of imprisonment for Count 30 is 96 months.

### E.  Guideline Sentence conflicting with Statutory Maximums

The United States Sentencing Guidelines provide:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. § 5G1.2(d).

In this case, the counts carrying the highest statutory maximum are the § 1956 convictions which carry a 240 month statutory maximum. The Guideline sentence for the § 1956 convictions is 121- 151 months, which is less than the 240 month statutory maximum.  Referring to U.S.S.G. § 5G1.2(d), the Second Circuit recently held that:

    where the Guidelines-recommended sentence exceeds the statutory
    maximum on some counts but not others, the court should impose no more
    than the statutory maximum on any one count but should impose the
    sentences consecutively to the extent necessary to reach the recommended
    Guidelines range.

U.S. v. Reifler, 446 F.3d 65, 113 (2d Cir. 2006).

  The § 2339B convictions carry the highest adjusted offense level. Consequently, in accordance with U.S.S.G. § 3D1.3(a), these offenses are controlling for scoring purposes. The Guideline range for these offenses, which can be grouped with the other offenses of conviction under U.S.S.G. § 3D1.3(b), constitutes the "total punishment" for purposes of Section 5G1.2(d). See PSR at ¶ 80 (discussing "Grouping"). The Guideline range for the § 2339B offenses is 292-365 months.

  Thus, if the Court were to apply § 5G1.2(d), Aref's sentence of imprisonment on the various convictions would be imposed within their statutory maximums but consecutively up to the point that the "total punishment" sentence of imprisonment under the Guidelines was reached. In this regard, applying § 5G1.2(d) would result in an aggregate sentence of at least 292 months, which is the lower end of the Guideline's range for the § 2339B convictions.

  However, "[a]s a result of United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005), §5G1.2(d) of the Sentencing Guidelines is advisory." United States v. Kuri, 427 F.3d 159, 164 (2d Cir. 2005). Accordingly, this Court possesses discretion to determine, after application of the factors set forth in 18 U.S.C. § 3553(a), whether to impose consecutive or concurrent sentences.

  As stated at the time of sentencing, the Court is aware of all of the factors set forth in 18 U.S.C. § 3353. Considering the factors set forth in § 3553(a), the Court finds that an

11

appropriate sentence is reached without applying §5G1.2(d).  The purported underlying terrorism crime around which the sting was based is a serious offense, and those who support these types of crimes deserve substantial punishment to deter them, and others like them, from committing similar crimes in the future.  But having said that, and having considered that Congress determined that the statutory maximum sentences for the § 2339A and § 2339B offenses to be 180 months, the Court finds that a sentence of 180 months is reasonable and sufficient to accomplish the goals set forth in § 3553(a).

While the underlying crime is serious, the evidence does not support the proposition that Aref actively sought out some way to aid a terrorist crime.  Rather, the crimes were presented to him.  In addition, 27 of the 30 counts arose out a sting operation, and Aref  was  convicted of only 9 of those 27 counts.  By the jury's determination, it could fairly be said that Aref, while possibly aware of the criminal transaction for some time, did not knowingly, intentionally, and criminally associate himself with it until July 1, 2004 - over six months after he became involved with the transactions between the CW and Defendant Hossain.  While his delay in entering into the scheme does not diminish his criminal responsibility, it does play some role in a consideration to the appropriate sentence for this defendant.  Having considered the available sentences under the Guidelines and the statutes;  the defendants' history and characteristics; the nature and circumstances of the crimes of conviction; the need for deterrence, punishment, and to protect the public; and the other factors set forth under § 3553, the Court finds that a sentence of 180 months is reasonable and adequate in these circumstances.

**F. 5K2.0**

The Court has considered Aref's motion for a further departure under 5K2.0 of the Guidelines based upon a combination of factors. While the Court is aware that it has the authority to depart under 5K2.0 in appropriate circumstances, the Court finds that those circumstances are not present here. The combination of factors argued by Defendant does not remove this case from the heartland of cases covered by the Guidelines. Accordingly, the motion for a § 5K2.0 downward departure is denied.

## IV. CONCLUSION

Therefore, upon Aref's conviction at trial of Counts 1, 10, 11, 12, 18, 19, 20, 26, 27, and 30 of the Superseding Indictment, it is the judgment of the Court that he shall be committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 151 months on each of Counts 1, 10 and 11; 180 months on each of Counts 12, 18, 19, 20, 26, and 27; and 6 months on Count 30. The sentences on all counts are to run concurrently with one another. Therefore, the aggregate term of imprisonment for all counts is 180 months.

Upon his release from imprisonment, Aref shall be placed on supervised release for a term of three (3) years on each of the counts of conviction. These terms of supervised release are to run concurrently, pursuant to 18 U.S.C. § 3624(e), for a total term of supervised release of three (3) years. The remaining terms and conditions of Aref's sentence have been set forth by the Court at the time of sentencing, are incorporated by reference herein, and shall be contained in the Judgement of Conviction that shall be entered in this case.

**IT IS SO ORDERED**

DATED: March 14, 2007

_____
Thomas J. McAvoy
Senior, U.S. District Judge